**James F. RUBLE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 18A04–0507–CR–391.

Court of Appeals of Indiana.

June 14, 2006.

Transfer Granted Aug. 24, 2006.

Stan G. Wyrick, Muncie, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

James F. Ruble appeals the sentence imposed by the trial court after his plea of guilty to the offense of operating a vehicle after a lifetime suspension, a class C felony.

We reverse and remand.

### ISSUE

Whether the trial court erred in not placing Ruble in a forensic diversion program.

### FACTS

On June 25, 2004, Ruble was operating a vehicle and refused to stop as directed by Officer Locke of the Muncie Police Department. Ruble drove his vehicle away, until he wrecked it and fled on foot. On July 1, 2004, the State charged Ruble with operating a vehicle after a lifetime suspension, a class C felony; resisting law enforcement, a class D felony; and failure to stop after an accident, a class B misdemeanor.

On March 18, 2005, a written plea agreement signed by Ruble was submitted to the trial court. The agreement provided that he would plead guilty to the class C felony operating-a-vehicle offense, the State would dismiss the other charges, and sentencing would be left "to the discretion of the court, with the exception of: a cap of executed time of 2 years to Department of Correction." (App.48). At a hearing on March 22, 2005, Ruble affirmed to the trial court that "no other promises other than . . . in the agreement" or any offer of a "suspended sentence, . . . probation, anything like that" had been made to him. (Tr. 8). Ruble then testified that on June 25, 2004, he had operated a vehicle when he knew that his driving privileges had been suspended for life. The trial court

took the matter under advisement and ordered a pre-sentence investigation report ("PSI").

When Ruble appeared for sentencing on June 9, 2005, he told the trial court that his counsel had informed him that the plea agreement would result in his placement in a forensic diversion program, rather than incarceration. The trial court held brief hearings on June 13th and June 16th to consider Ruble's assertions in this regard. The trial court also appointed new counsel for Ruble, and he was evaluated for the forensic diversion program.

Ruble appeared with his new counsel at the final sentencing hearing, on June 20, 2005. June Kramer, executive director of Community Corrections, testified that the forensic diversion program was for persons who had "a severe substance abuse problem"; they were provided "intensive supervision ... in an effort to prevent them from using." (Tr. 63). Based upon information provided to her by Ruble, Kramer testified, "he definitely has a substance abuse problem." (Tr. 64). Kramer further testified that the program "would have no objection" to Ruble being placed in the program and would accept him if the court "order[ed] him into it." (Tr. 65). The program would have a three-year duration, with reports being made to the court, and if Ruble failed to comply with program rules, Kramer "would file a petition asking for revocation." *Id.*

It was established that Ruble's criminal history dated from 1988 and included 15 misdemeanor convictions and 1 felony conviction; that he had been placed on probation three times, and one probation violation had been filed; that Ruble's offenses generally involved motor vehicle operation; that he had been gainfully employed throughout his adulthood; and that he was the father of 4 minor children, 2 of whom he supported.

Ruble reaffirmed his desire to plead guilty but requested that he be placed in the forensic diversion program for his sentence. The State argued that "forensic diversion ... wasn't in the plea agreement," which did not "include[ ] all the rules ... within the plea agreement itself." (Tr. 68). The State also argued that the program was "for those individuals who commit crimes because of their substance abuse problems," and Ruble's offense was not for "his act of substance abuse." *Id.* The State did not "object" to Ruble's being "sentence[d] into that program" but did ask that he be sentenced "to three (3) years; two (2) years executed, one (1) year suspended." (Tr. 69).

The trial court stated that it had considered Ruble's age, his past contact with the criminal justice system, the facts of the present offense, his offered guilty plea, the fact that another felony would be dismissed, and the plea agreement. It then found him guilty of operating a vehicle after a lifetime suspension, a class C felony, and entered a judgment of conviction. The trial court proceeded to find as mitigating circumstances his guilty plea, his past gainful employment and support of his family, and that incarceration would be a hardship on his children. It found as aggravating circumstances Ruble's "long history of contact with the criminal justice system dating back to 1988 consisting of fifteen ... misdemeanor convictions and one ... felony conviction"; that he had been placed on probation at least three times and a prior violation of probation had been filed, showing that prior attempts at probation and correction treatment had not been successful; that Ruble's crime was "the type of crime directed at the public at large"; and that his "pattern of offenses" involved motor vehicle operation. (App.105). After considering these circumstances and Ruble's request

for placement in the forensic drug program, the trial court ordered him committed to the Department of Correction for five years—with three years suspended and two years to be executed, and his placement on probation for three years.

## DECISION

The five-year sentence imposed by the trial court is within the statutory range. *See* Ind.Code § 35–50–2–6 (standard, or "advisory," sentence for C felony four years, with the range being two to eight years). Ruble does not argue that the trial court abused its discretion in sentencing him to a term of five (5) years, which was an enhancement of the advisory sentence by one year. Nor does Ruble argue that his sentence is inappropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B). Rather, Ruble argues that the trial court abused its discretion in sentencing him to the Department of Correction in lieu of ordering his placement in the forensic diversion program. Although we find that the trial court failed to fully comply with the statute, we cannot agree that the statute requires that Ruble be placed in the forensic diversion program in lieu of serving an executed sentence at the Department of Correction.

As our Supreme Court has recently noted, within "the legal parameters," sentencing decisions rest with the discretion of the trial court. *Estes v. State*, 827 N.E.2d 27, 28 (Ind.2005). Thus, we turn to the current forensic diversion program statute to determine whether the trial court observed the legal parameters therein.

█ The legislature established a "forensic diversion program" effective July 1, 2004. *See* P.L. 85–2004.[1] Placed in Title 11, Corrections, the program appears to reflect a public policy determination by the legislature that when persons with a mental illness or an addictive disorder are charged with or convicted of certain offenses and their criminal history is limited in certain ways, the criminal justice system should provide treatment for their illness or disorder as the preferred means of correction. The forensic diversion program is codified at Indiana Code 11–12–3.7–1 *et seq.* It is

> a program designed to provide an adult:
> (1) who has a mental illness or an addictive disorder, and
> (2) who has been charged with a crime that is not a violent offense; *an opportunity to receive community treatment* and other services addressing mental health and addiction instead of or in addition to incarceration.

I.C. § 11–12–3.7–4 (emphasis added). Certain offenses are identified as "violent offense[s]" for the purpose of this program; the offense of operating a vehicle after a lifetime suspension is not one of them. *See* I.C. § 11–12–3.7–6. An individual may request treatment under this program, or the trial court may order an evaluation of the individual to determine whether he is an appropriate candidate for forensic diversion. I.C. § 11–12–3.7–8. When an individual is ordered by the court to undergo treatment in a forensic diversion program, reports "shall be provided" to the trial court regularly. I.C. § 11–12–3.7–9.

There is "a pre-conviction forensic diversion program," but eligibility is limited to those charged with a class "A, B, or C misdemeanor" or a class "D felony"; thus, Ruble was not eligible for the pre-convic-

---

**1.** The statute repealed the forensic diversion program formerly found at I.C. § 11–12–3.5–1 *et seq.*

tion forensic diversion program. However, there is also "a post-conviction forensic diversion program." *See* I.C. § 11–12–3.7–12.

■■■ An eligible person for the post-conviction forensic diversion program is defined as one who has a mental illness or an addictive disorder, has been convicted of an offense that is not a violent offense or a drug dealing offense, and does not have a conviction for a violent offense in the previous ten years. I.C. § 11–12–3.7–12(a). Assuming that Kramer's testimony established that Ruble has an addictive disorder,[2] he is eligible based on the offense of which he was convicted and the fact that his criminal record does not reflect "a conviction for a violent offense in the previous ten (10) years." *Id.*

■■■ When a person is found to be eligible for the post-conviction forensic diversion program and "has been convicted of an offense that may be suspended," the statute provides that the trial court

*shall* suspend all or a portion of the person's sentence, place the person on probation for the suspended portion of the person's sentence, and require as a

condition of probation that the person successfully participate in and successfully complete the post-conviction forensic diversion program.

I.C. § 11–12–3.7–12(b) (emphasis added).[3] Reviewing Ruble's criminal history, and the provisions of Indiana Code section 35–50–2–2 as to the authority of a trial court to suspend "any part of a sentence for a felony," we conclude that Ruble's current offense appears to allow for his sentence, or a portion of his sentence, to be suspended.[4] Therefore, the statute mandates that because Ruble is eligible for the post-conviction forensic diversion program, the trial court shall

place [Ruble] on probation for the suspended portion of the [his] sentence, and require as condition of probation that [Ruble] successfully participate in and successfully complete the post-conviction forensic diversion program.

*Id.* We note, however, that the statute does not require the trial court to suspend *all* of Ruble's sentence in lieu of incarceration and place him on probation while he participated in the forensic diversion program. Nevertheless, the statute *does* re-

---

**2.** The statute defines an "addictive disorder" for purposes of the forensic diversion program as "a diagnosable chronic substance use disorder of sufficient duration to meet diagnostic criteria within the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association." I.C. § 11–12–3.7–1. Presumably, Kramer and those administering the program are familiar with this definition, and their agreement to accept Ruble in the program constitutes a finding that Ruble's substance abuse problem meets the definition.

**3.** The statute proceeds to provide that in the post-conviction forensic diversion program for those convicted of offenses for which the sentence may be suspended, if the program reports to the court the failure of a participant to successfully participate in or complete the program and the court finds this to be

true, the court "shall revoke the person's probation and reimpose all or a portion of the person's suspended sentence." I.C. § 11–12–3.7–12(e)

**4.** The State, having limited its argument with respect to placement in the forensic diversion program to the general assertion that the trial court did not abuse its discretion when it declined to place Ruble in the forensic diversion program, does not argue that Ruble was "convicted of an offense that is nonsuspendible." I.C. § 11–12–3.7–12(c). In such a case, the trial court "shall order the execution of the nonsuspendible sentence and stay execution of all or part of the nonsuspendible portion of the sentence pending the person's successful participation in and successful completion of the post-conviction forensic diversion program." *Id.*

quire that Ruble be placed on probation during the period of the suspended sentence and to participate in and successfully complete the forensic diversion program as a term of probation.

We find that the sentence imposed by the trial court failed to observe the legal parameters of the statute when it did not place Ruble on probation for the suspended portion of his sentence and require as a condition of probation his successful participation in and completion of that program. *See id.* Therefore, we must reverse and remand for entry of a sentencing order that complies with the requirements of the statute.[5]

Reversed and remanded.

KIRSCH, C.J., and SULLIVAN, J., concur.

---

5. Complying with the statute by ordering such placement for Ruble will not violate the terms of the plea agreement, inasmuch as the agreement provided that sentencing was left to the discretion of the trial court "with the exception of [a] cap of executed time of 2 years to Department of Correction." (App.48).