ATTORNEY FOR APPELLANT
Stan G. Wyrick
Muncie, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Michael G. Worden
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

### No. 18S04-0608-CR-304

JAMES F. RUBLE,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Delaware Circuit Court, No. 18C03-0407-FC-25
The Honorable Robert L. Barnet, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 18A04-0507-CR-391

**January 3, 2007**

**Shepard, Chief Justice.**

Appellant James F. Ruble pled guilty to operating a vehicle after his driving privileges had been suspended for life, a class C felony. On appeal, he has contended that the trial court should have assigned him to serve his sentence through forensic diversion. The Court of Appeals held that the Indiana Code mandates he be assigned to diversion, and reversed. We conclude otherwise and affirm the trial court.

The underlying facts reveal that on June 25, 2004, an officer of the Muncie Police Department ordered Ruble to halt his vehicle in the course of a traffic stop. Instead, Ruble drove away, eventually wrecked the vehicle, and fled on foot.

The State charged Ruble in multiple counts for this event. The parties subsequently tendered a plea agreement that provided for dismissal of all but the present class C felony. The agreement left sentencing to the discretion of the trial court, with a cap of two years executed time.

The trial court ordered preparation of a pre-sentence report and agreed to Ruble's request that he be evaluated for possible referral to the local Forensic Diversion Program, created under authority of Ind. Code Ann. ch. 11-12-3.7 (West 2006). Forensic Diversion adds to the range of misdemeanor and felony dispositions by authorizing suspended sentences conditioned on treatment for mental illness or addictive disorders.

The court conducted a sentencing hearing. The director of the county's Community Corrections program reported that Ruble "definitely has a substance abuse problem" and that the Forensic Diversion Program "would have no problem" with his participation. (Tr. at 64-65.) Ruble asked the court to place him in Forensic Diversion. The State said it had no objection to Forensic Diversion, but it requested that Ruble be ordered to serve some executed time.

Explaining its sentence, the trial court found a number of mitigating and aggravating circumstances. As mitigators, it noted Ruble's decision to plead guilty, the fact that he maintained gainful employment and attempted to meet his family responsibilities, that long-term incarceration would be harmful to his children, and that Ruble retained some support among family and friends. As aggravators, the court noted a history of contact with the criminal justice system going back to 1988, a record of fifteen misdemeanor convictions and one felony conviction, and three prior placements on probation. It concluded that earlier attempts at probation and correctional treatment had not been successful. It sentenced Ruble to five years, suspending three.

The Court of Appeals reversed. It held that the Indiana Code requires a trial court to place on Forensic Diversion any person who meets the statutory eligibility criteria. Ruble v. State, 849 N.E.2d 165, 169-70 (Ind. Ct. App. 2006), vacated. To be "eligible," an offender must have an addictive disorder or a mental illness meeting diagnostic criteria in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders; offenders being sentenced for violent crimes or drug dealing offenses, and those convicted for a violent offense in the previous ten years are not eligible. Ind. Code Ann. § 11-12-3.7-12(a) (West 2006). The Court of Appeals directed the trial court to place Ruble on Forensic Diversion for at least part of his sentence. We granted transfer.

The conclusion that Forensic Diversion is mandatory rested on part of section 12 of the Forensic Diversion statute that says: "If the person has been convicted of an offense that may be suspended, the court shall suspend all or a portion of the person's sentence" and make successful completion of Forensic Diversion a condition of probation. Ind. Code Ann. § 11-12-3.7-12(b) (West 2006) (emphasis added). Similarly, it provides that when the person has been "convicted of an offense that is nonsuspendible, the court shall order the execution of the nonsuspendible sentence and stay execution of all or part." Ind. Code Ann. § 11-12-3.7-12(c) (West 2006).

We conclude that the General Assembly did not intend mandatory suspension and referral of all persons meeting the minimum criteria in section 12 for two reasons, one based in statutory language and the other based on probable intent.

First, because the idea of Forensic Diversion is to create additional treatment-based alternatives to incarceration, the legislature understandably elected to exempt sentences ordering such diversion from the provisions in Title 35 that mandate nonsuspendible sentences for certain crimes. Those exemptions, also a part of the legislation creating Forensic Diversion, provide: "With respect to the following crimes listed in this subsection, the court may suspend only that part of the sentence that is in excess of the minimum sentence, unless the court has approved placement of the offender in a forensic diversion program under IC 11-12-3.7." Ind. Code Ann. § 35-50-2-2(b) (West 2006).

3

The Forensic Diversion provisions in Title 11 and Title 35 complement each other only if they are understood as meaning that <u>when</u> a trial court <u>approves</u> placement of an offender on Forensic Diversion, it <u>shall</u> suspend at least a part of the sentence to probation and make successful completion of Forensic Diversion a condition of probation.

Second, reading these two sections in Titles 11 and 35 without any reference to each other, and holding that the General Assembly made suspension and participation mandatory for all persons meeting the minimum Forensic Diversion criteria would create other anomalies the legislature is unlikely to have intended. To take one example, it would mean that the legislature commanded nonsuspendible sentences for offenders who resist law enforcement by using deadly weapons (in section 35-50-2-2(b)(4)(L)), but permitted part or all of the sentence for such offenders to be suspended or waived (in section 11-12-3.7-12). It seems apparent that the General Assembly has been more purposeful than that.

We thus conclude that the trial court had the authority to determine, based on an evaluation of Ruble's suitability for diversion, as well as the nature of the offense and the nature of the offender, whether to order Ruble placed on Forensic Diversion. The record before the trial court reflected three convictions for driving while intoxicated, multiple convictions for motor vehicle violations leading to a lifetime suspension, and the failure of past grants of probation. It was within the court's range of responsible discretion to determine that Ruble was not a suitable candidate.

We affirm the judgment of the trial court.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.

4