**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DONALD S. EDWARDS**
Columbus, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| WILFRIDO GARCIA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 03A01-1306-CR-284 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BARTHOLOMEW CIRCUIT COURT
The Honorable Stephen R. Heimann, Judge
Cause No. 03C01-1301-FB-217

**February 6, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Senior Judge**

## STATEMENT OF THE CASE

Wilfrido Garcia appeals his sentence for Class C felony carrying a handgun without a license. We affirm.

## ISSUES

Garcia contends the trial court abused its discretion in sentencing him by failing to find several mitigating circumstances and by failing to place him in a post-conviction forensic diversion program.

## FACTS AND PROCEDURAL HISTORY

In January 2013, the police stopped a vehicle driven by Garcia because its registration plate did not match the vehicle description on file. After determining that Garcia had an outstanding warrant and had never obtained a driver's license, the police conducted a search incident to arrest. A Tic Tac container with Hydrocodone pills, an ASP baton, a knife, and a stun gun were found on his person. An inventory search of the vehicle revealed a folding knife with the blade open on the floor between the driver's seat and the center console as well as a loaded handgun on the driver's side floorboard where Garcia's right foot would have been. State's Ex. 1, pp. 5, 8; Appellant's App. p. 98.

The State charged Garcia with Class B felony possession of a firearm by a serious violent felon and Class D felony possession of a controlled substance. In April 2013, pursuant to a plea agreement, Garcia pleaded guilty to an amended charge of Class C felony carrying a handgun without a license. In exchange, the State agreed to dismiss the drug charge and to refrain from filing any additional charges stemming from its investigation.

2

At the sentencing hearing, the trial court found no mitigating circumstances. As aggravators, the court identified: (1) Garcia's criminal history, which included three prior felony convictions; (2) that programs he had been offered in the past, including alcohol and drug programs, had not been effective; and (3) that he had been granted probation before, but it was later revoked.[1] The court also set forth the factors it considered in denying his request to be placed in a forensic diversion program. Particularly, it noted: (1) that he had absconded from community corrections in the past and indicated that he would do so again under certain circumstances; (2) his violent tendencies; and (3) his continued use of illegal drugs. The court sentenced Garcia to seven years and three months in the Department of Correction. Garcia now appeals his sentence.

DISCUSSION AND DECISION

I. MITIGATING CIRCUMSTANCES

Subject to the review and revision power under Indiana Appellate Rule 7(B), sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* One way in which a trial court may abuse its discretion is by entering a sentencing statement

---

[1] The trial court also found as an aggravator that Garcia was on probation at the time of the instant offense, but a few days after the sentencing hearing, Garcia informed the court that he was not on probation at the time of the offense. The court issued an amended sentencing order accordingly.

3

that omits reasons that are clearly supported by the record and advanced for consideration. *Id.* at 490-91.

Garcia contends the trial court abused its discretion in sentencing him by failing to find his guilty plea, remorse, drug addiction, mental health history, and family hardship due to incarceration as mitigating circumstances. We address each in turn.

Guilty plea. Garcia argues the court should have found his guilty plea as a mitigator. A trial court does not necessarily abuse its discretion by failing to recognize a defendant's guilty plea as a significant mitigating circumstance. *See Anglemyer*, 875 N.E.2d at 220-21. A guilty plea does not rise to the level of significant mitigation where the defendant has received a substantial benefit from the plea. *See id.* at 221.

Garcia was originally charged with Class B felony possession of a firearm by a serious violent felon and Class D felony possession of a controlled substance. Pursuant to the plea agreement, the State: (1) allowed him to plead guilty to an amended charge of Class C felony carrying a handgun without a license; (2) agreed to dismiss the Class D felony drug charge; and (3) agreed to refrain from filing any additional charges stemming from its investigation. A Class B felony carries a maximum sentence of twenty years, and a Class D felony carries a maximum sentence of three years. *See* Ind. Code §§ 35-50-2-5 (2005), -7 (2012). Had Garcia been convicted of the Class B and Class D felonies originally charged, he could have faced a potential sentence of up to twenty-three years. Instead, the plea agreement allowed him to significantly limit his sentencing exposure to just eight years. *See* Ind. Code § 35-50-2-6 (2005) (maximum sentence for Class C felony is eight years). Garcia thus received a substantial benefit from his guilty plea.

4

The court therefore did not abuse its discretion by failing to find that his guilty plea rose to the level of a significant mitigator.

Remorse. Garcia next argues the court should have found his remorse as a mitigator, but he fails to point to any statement of remorse in the record. Instead, the presentence investigation report reveals that he denied committing the crime to which he pleaded guilty and blamed his attorney for his guilty plea.[2] *See* Appellant's App. p. 92.

Moreover, despite the fact that the handgun was found on the driver's side floorboard where Garcia's right foot would have been, his statements at the sentencing hearing show he was trying to convince the court that he was merely in the wrong place at the wrong time. Specifically, he claimed he did not know the vehicle he was driving contained a handgun because the vehicle was not his, and he stated he was willing to take responsibility because he should have thoroughly checked the vehicle for weapons. Tr. pp. 24-25. At best, his acceptance of responsibility was equivocal.

In light of the presentence investigation report and Garcia's refusal to acknowledge he knew of the handgun that was next to his feet, the trial court did not abuse its discretion by failing to find remorse as a mitigator.

Drug addiction. Garcia also argues the court should have found his severe drug addiction as a mitigator. A trial court is not required to consider allegations of a defendant's substance abuse as a mitigating circumstance. *James v. State*, 643 N.E.2d 321, 323 (Ind. 1994).

---

[2] The chronological case summary does not reflect that Garcia ever filed a motion to withdraw his guilty plea.

Garcia's presentence investigation report reveals a significant history of substance abuse that began when he was eleven years old and includes marijuana, LSD, PCP, heroin, cocaine, methamphetamine, methadone, ecstasy, and prescription pain pills. At age twelve, he supported his twin children and girlfriend by dealing cocaine and marijuana. At age eighteen, he overdosed on drugs, was revived by medical personnel, and was hospitalized. His drug of choice has recently evolved from a combination of heroin and cocaine to methamphetamine.

Despite Garcia's long record of past and present drug abuse, he denied he had any problem with drugs at his change of plea hearing. Tr. p. 18 ("JUDGE: Are you a drug abuser or alcoholic? MR. GARCIA: No sir."). In addition, as noted in the trial court's sentencing order, drug abuse treatment programs that had been offered to him in the past had been ineffective. The trial court did not abuse its discretion by failing to find Garcia's drug addiction as a mitigator.

Mental health history. Garcia then argues the court should have found his mental health history as a mitigator. The presentence investigation report shows Garcia told the probation officer preparing the report that he has been diagnosed with paranoid schizophrenia, multiple personality disorder, and bipolar disorder.

When the trial court noted at the sentencing hearing that he has continued to abuse methamphetamine and methadone even while on medication for his mental health, Garcia claimed methamphetamine was like medication for him. Tr. p. 70 ("[T]he meth was like my Seroquel. I mean, when I tried meth, it actually put me to sleep. I could eat. My mind slowed down. It did just the opposite."); *see also* Appellant's App. pp. 91-92

6

(presentence investigation report reflecting Garcia's statements that drugs and alcohol have the "opposite effect" on him and that some of his drug use was an attempt to self-medicate his mental health issues). His self-medication with methamphetamine shows he takes neither his drug addiction nor mental health issues seriously. *See Webb v. State*, 941 N.E.2d 1082, 1089 (Ind. Ct. App. 2011) (no abuse of discretion in failing to find mental health to be a mitigator where defendant had pattern of stopping prescribed treatment and self-medicating with illegal drugs), *trans. denied*.

Further, in determining the mitigating weight, if any, that should be given to mental illness in sentencing, a court should consider: (1) the extent of the defendant's inability to control his behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. *Weeks v. State*, 697 N.E.2d 28, 30 (Ind. 1998). Garcia offered no evidence on any of these factors at the sentencing hearing.

The trial court did not abuse its discretion by failing to find Garcia's mental health history as a mitigator given the lack of evidence with which the court could evaluate the proffered mitigator and his self-medication with methamphetamine.

Family hardship. Garcia finally argues the court should have found as a mitigator that his family would suffer hardship as a result of his incarceration. He points to evidence that he supports his minor child[3] and that his own mother has health issues. Absent special circumstances, however, a trial court is not required to find that

---

[3] This child was born over twenty years after the births of Garcia's twin children.

imprisonment will result in undue hardship to dependents. *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999).

The record shows no such special circumstances here. The presentence investigation report states that Garcia's minor child has been a ward of the State since 2011. Appellant's App. p. 90. Although Garcia pays child support, the record shows the payments come from his disability benefits and not from any employment he holds. *See* Tr. p. 30. As for the claim of hardship to Garcia's mother, his own testimony shows she lives independently in Texas with her husband. While Garcia provided documentation of her health issues and testified she was thinking of temporarily moving to Indiana so he could help her with her diet, he provided no evidence that he was currently tending to her health issues. The trial court did not abuse its discretion by failing to find family hardship as a mitigator.

## II. FORENSIC DIVERSION PROGRAM

Garcia also contends the trial court abused its discretion in sentencing him by failing to place him in a forensic diversion program. According to Indiana Code section 11-12-3.7-4 (2007), a forensic diversion program is

> a program designed to provide an adult:
> (1) who has a mental illness, an addictive disorder, or both a mental illness and an addictive disorder; and
> (2) who has been charged with a crime that is not a violent offense;
> an opportunity to receive community treatment and other services addressing mental health and addiction instead of or in addition to incarceration.

Under Indiana Code section 11-12-3.7-12(a) (2007), a person is eligible to participate in a post-conviction forensic diversion program only by meeting the following criteria:

8

(1) The person has a mental illness, an addictive disorder, or both a mental illness and an addictive disorder.
(2) The person has been convicted of an offense that is:
    (A) not a violent offense; and
    (B) not a drug dealing offense.
(3) The person does not have a conviction for a violent offense in the previous ten (10) years.
(4) The court has determined that the person is an appropriate candidate to participate in a post-conviction forensic diversion program.
(5) The person has been accepted into a post-conviction forensic diversion program.

It is within the discretion of the trial court to determine whether a defendant is to be placed in a post-conviction forensic diversion program. *See Ruble v. State*, 859 N.E.2d 338, 341 (Ind. 2007) (reviewing trial court's decision against placement in forensic diversion program for abuse of discretion).

The trial court here noted three factors it considered in denying Garcia placement in a forensic diversion program. First, the court noted that Garcia had absconded from community corrections in the past and testified at sentencing that he would do so again under certain circumstances. *See* Tr. p. 43 (Garcia explaining that he absconded from community corrections after his mother had two major knee surgeries and further stating, "And would I do it again if my mom needed me, yes sir, I would.").

Second, the court noted two instances of his prior violent behavior toward law enforcement:

> [Y]ou violated probation by committ[ing] Battery and Resisting Law Enforcement in Jackson County, where they have the police report from there that indicates that you caused a police officer injury fighting with the officer, striking Officer Munson and, you know, the police reports on that indicate that you suddenly exited the vehicle and began charging the officer's location with clenched fist, yelling f*ck you n*gger. The officer immediately ordered you . . . to return to your vehicle. However, you

9

disregarded the instruction, continued to approach the officer. [The officer,] afraid you might be armed with a weapon, took cover behind a door, ordered you to stop, keep your hands where they could be seen and you continued to shout, f*ck you mother f*cker. And then it talks about striking the officer, continuing to thrash, break[ing] free. . . . And then later in 2004, [you] violated conditions of probation by committing the offense of Battery with a knife[,] Criminal Recklessness, Resisting, Interfering with Law Enforcement and Disorderly Conduct. Once again, I've got the police report here. Standing on the front porch armed with a knife. Upset and bleeding from the wrist, stating they are going to have to kill you, smashed out the storm door glass with his fist and was going in and out of the house tearing things up, threw the knife, officer ducked so it missed him.

*Id.* at 68-69. Although Garcia claimed at sentencing that medication was helping him to control his behavior, the court noted a recent incident involving defense counsel just a couple weeks before sentencing. Specifically, defense counsel stated in a request to withdraw:

Even though by the Defendant's letter of May 3 to the Judge[,] counsel was not going to represent the Defendant any longer, Counsel did go to jail on Sunday evening on May 19 to talk about sentencing. Again the situation was not just bad but turned out to be dangerous. Defendant did all the talking. Defendant began yelling, shouting, cussing, stood up, sw[u]ng his arms, fingers and hands at counsel, knocked counsel's files off [the] table and got in counsel's face at which time counsel called the jail personnel to come intervene and remove the Defendant before bodily injuries occurred. The jail came and Defendant was totally out of control and had to be restrained.

Appellant's App. pp. 36-37. Garcia's only explanation to the court at sentencing was that he "talk[s] with [his] hands." Tr. p. 70.

Finally, the third factor noted by the court in denying Garcia placement in a forensic diversion program was his continued use of illegal drugs despite being on medication for his mental health issues.

Based on the entire record before the trial court, it was well within its discretion to determine that Garcia was not a suitable candidate for a forensic diversion program. *See Ruble*, 859 N.E.2d at 341 (no abuse of discretion in determining defendant was not suitable candidate for forensic diversion program where record reflected three convictions for driving while intoxicated, multiple convictions for motor vehicle violations leading to a lifetime suspension, and failure of past grants of probation).

CONCLUSION

We therefore affirm Garcia's sentence.

NAJAM, J., and MAY, J., concur.