**Merle R. WEBB, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–1006–CR–650.

Court of Appeals of Indiana.

Jan. 31, 2011.

Transfer Denied April 7, 2011.

Michael C. Borschel, Fishers, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Merle R. Webb pled guilty to driving while suspended, robbery, six counts of fraud, and two counts of attempted fraud. He received a sentence of twenty years for robbery and an aggregate sentence of

twenty-five years. On appeal, Webb challenges only his sentence for robbery; however, we conclude that our review may not be limited to a single sentence when multiple sentences are imposed at the same time. Webb argues that his sentence is inappropriate and also that the trial court abused its discretion by not entering a reasonably detailed sentencing statement and by not finding as mitigating factors his mental health, his age, his remorse, his willingness to pay restitution, and his guilty plea. As Webb pled guilty to all charges without the benefit of a plea agreement, we conclude that the trial court should have identified his guilty plea as a mitigating factor. However, we conclude that the trial court would not have imposed a lesser sentence even if it had explicitly identified his guilty plea as a mitigating factor. We also conclude that Webb has not established that his sentence is inappropriate. Therefore, we affirm.

### Facts and Procedural History

On May 21, 2009, Webb was charged with driving while suspended as a class A misdemeanor. On December 18, 2009, Webb was charged under a separate cause number with robbery as a class B felony, six counts of fraud as class D felonies, and two counts of attempted fraud as class D felonies. The two cases were consolidated, and on March 18, 2010, Webb pled guilty to all charges without a plea agreement.

The factual basis given at the guilty plea hearing established that on February 22, 2009, Webb operated a vehicle while his license was suspended. On December 14, 2009, he entered the garage of an elderly woman, B.Q., who had just arrived home and was unloading her groceries. Webb demanded that she give him her purse and jewelry. When she refused, he grabbed her arm and threw her to the ground. B.Q. had recently been in an accident and

was still recovering from broken ribs, so she attempted to crawl under her vehicle to protect herself from further injury. However, Webb kicked her until he noticed her purse, which he took and ran away. B.Q. suffered bruises and pain as a result of the attack.

B.Q.'s purse contained approximately $2850 in cash that she had recently withdrawn to purchase Christmas gifts. Her purse also contained her glasses, keys, cell phone, and license, all of which had to be replaced. Over the next two days, Webb used B.Q.'s credit card to make purchases at six different stores and attempted to make purchases at two additional stores. Webb's presence at B.Q.'s house was confirmed by fingerprints lifted from her vehicle and DNA on a cigarette butt found behind a bush near her garage. Many of the fraud and attempted fraud counts were supported by witness identification, video surveillance, and/or receipts. Webb also made a statement to the police in which he admitted to using B.Q.'s credit card.

The sentencing hearing was held on May 21, 2010. Webb submitted medical records dating from 1999 to 2009. He was diagnosed with attention deficit hyperactivity disorder at the age of five and with bipolar disorder sometime in his teens. The medical records reflect that Webb's symptoms have included difficulty sleeping, depression, irritability, rage, anxiety, impulsiveness, and hyperactivity. The records also show that Webb has poor social skills. A treatment plan from 2000, when Webb was thirteen, indicated that Webb gets into fights, runs away, defies authority, and threatens to hurt others. In 2009, Webb began attending an anger management group, but quit soon after he started. Webb was prescribed Wellbutrin, Zyprexa, Adderall, and/or Klonopin between 2000 and 2009.[1] The medical records reflect

---

1. Webb states that Wellbutrin treats depres-
sion and anxiety, Zyprexa is an anti-psychotic

that Webb ceased treatment on several occasions and complained about how the medications made him feel.

Webb's sister, Heather Webb, confirmed that Webb has received "[s]ome" mental health treatment, but he "has a tendency to not continue his treatment." Tr. at 56. When asked why Webb does not stay on his medications, she said, "I don't know. I wish he would stay on his meds." id. at 59. She indicated that when Webb is not taking his medications, "he does become angry and does use profanity at times." Id. However, Heather felt that he was "calm," id., and "a totally different person" when he takes his medications. Id. at 57. Heather testified that Webb had helped care for her father for several years while he was terminally ill and that Webb normally treats older people with respect.

Webb's mother, Debbie Brookshire, also testified that Webb is a "whole different person" when he takes his medications, and she stated that she has begged him to stay on his medications. Id. at 66. She testified that Webb has complained that his medications make him feel tired and lightheaded. Both Webb's mother and sister asked that he be placed in a state hospital.

Webb attributed the robbery to his use of illegal drugs. He had been off of his medications for about two months at the time. Webb acknowledged that he was receiving medications while incarcerated, but claimed that they were not as effective as the ones he had previously taken. Webb apologized to B.Q. and claimed that he had never harmed anyone before.

B.Q. testified about her injuries and pecuniary losses and described the incident as "horrible." Id. at 47. The State also presented substantial evidence of Webb's

conduct in jail and prison since his most recent arrest. Detective Wendell Daniel testified that Webb had phone conversations with his girlfriend, Katherine Adams, in which he instructed her to dispose of his guns and to smuggle marijuana and cell phones into prison. Webb was formally disciplined for his plan to smuggle cell phones into prison, and Adams was barred from visiting the prison. Thereafter, Webb instructed her to obtain a fake ID so that she could carry out the plan to smuggle cell phones.

Webb also had a conversation with Adams in which she told him that the police had failed to discover a quarter pound of marijuana that was in their van the day that he was arrested. When she told him that she gave the marijuana to Brookshire, Webb became enraged because he thought Brookshire would sell the drugs and keep the money for herself. Brookshire told him that she had put the money in his commissary account, but Webb became enraged because he felt that the drugs were worth more than the deposit that she had made. Detective Daniel testified that, in general, Webb's tone in these conversations was extremely angry and profane. Detective Daniel, who has had some training on mental health issues, acknowledged that angry outbursts could be consistent with bipolar disorder.

The State also submitted incident reports from the Department of Correction ("DOC") and the Marion County Jail. Webb was disciplined on two separate occasions for refusing to obey orders. On another occasion, he became enraged during a conversation with a DOC employee and screamed, "You b* * * * let me out of here and I'll kick your fat a* *." Appellant's App. at 96. He continued to scream

used to treat bipolar disorder and schizophrenia, and Klonopin is used to treat anxiety. Adderall is used to treat ADHD. MedlinePlus,

http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601234.html (last visited Jan. 18, 2011).

threats and obscenities as the employee walked away. While in the Marion County Jail, he was found in possession of a bottle filled with feces and urine. When confronted about the bottle, Webb said he was going to "sh* * down" a deputy and that he was "going to get him before I leave here." *Id.* at 80.

The presentence investigation report reflects that Webb has juvenile adjudications of disorderly conduct and battery. He also has convictions of class B misdemeanor criminal recklessness, class A misdemeanor battery in 2006 and 2008, class D felony resisting law enforcement, class D felony criminal recklessness, class A misdemeanor domestic battery, and class A misdemeanor criminal conversion. Webb has had probation revoked in three different cases and was on probation at the time of the current offenses.

The presentence investigation report also shows that Webb reported that prior to his most recent arrest, he had been using marijuana daily, was using cocaine once a week, and was drinking alcohol on weekends. He first began using drugs at the age of twelve and has experimented with numerous drugs.

Defense counsel acknowledged that the trial court could not order the DOC to perform a psychological evaluation or place him in a state hospital, but requested that the trial court make that recommendation to the DOC. The trial court stated that it had "sympathy for what [Webb] suffer[s]," but indicated that it could not recommend placement in a mental health facility based on the evidence presented and would leave that determination to the DOC. Tr. at 94. The abstract of judgment shows that the trial court recommended that the DOC conduct a psychiatric evaluation of Webb. As aggravating factors, the trial court found that Webb had a criminal record that had escalated in seriousness, that the victim was over the age of sixty-five, that

he lay in wait for the victim, and that he self-medicated with illicit drugs instead of following his prescribed treatment. The trial court sentenced Webb to twenty years for robbery, two years for each count of fraud and attempted fraud, and one year for driving while suspended. The court ordered the robbery conviction, two of the fraud convictions, and the driving while suspended conviction to be served consecutively, for an aggregate sentence of twenty-five years, all of which was to be served in the DOC.

## Discussion and Decision

Webb states that he wishes to challenge only his sentence for robbery and that he waives review of his other sentences. Appellant's Br. at 1 n. 2. Webb wishes to appeal only his robbery sentence, for which he received the maximum penalty, so as to shield himself from the risk of having his aggregate sentence revised upward on appeal. *See McCullough v. State,* 900 N.E.2d 745, 750 (Ind.2009) (holding that when exercising its constitutional power to review sentences, an appellate court may affirm, reduce, or increase the sentence).

■ Therefore, as a preliminary matter, we must decide whether a defendant may limit review to an individual sentence when multiple sentences are imposed in a single order. Neither party has cited a case in which we have squarely addressed this issue. However, the State points to the following language from our supreme court's opinion in *Cardwell v. State:*

Ultimately the length of the aggregate sentence and how it is to be served are the issues that matter. In the vast majority of cases, whether these are derived from multiple or single counts, involve maximum or minimum sentences, and are concurrent or consecutive is of far less significance than the aggregate term of years. And whether we regard

a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case.

. . . .

In the case of some crimes, the number of counts that can be charged and proved is virtually entirely at the discretion of the prosecution. For that reason, appellate review should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count.

895 N.E.2d 1219, 1224–25 (Ind.2008).

The wisdom and necessity of focusing on the aggregate sentence rather than individual sentences are highlighted by the facts of this case. Webb received the maximum penalty for robbery. When that sentence is viewed independently, it appears that the court exercised no leniency. However, his aggregate sentence of twenty-five years is twenty years less than the maximum sentence he could have received. The sentences were imposed at the same time based on the same evidence; therefore, the trial court surely considered the relative leniency that was given on the fraud and attempted fraud sentences when deciding to impose the maximum sentence for robbery. A sentence of twenty-five years could have been achieved in a number of different ways, and so long as that is an appropriate sentence for Webb's offenses as a whole, we see no reason to meddle with the particular method used by the trial court. Therefore, we conclude that Webb should not be allowed to limit review to his robbery sentence; instead, we will review his aggregate sentence.

### I. Abuse of Discretion Review

■ Webb argues that the trial court abused its discretion by entering a sentencing statement that is not reasonably detailed and by overlooking mitigating circumstances. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind.2007), *clarified on reh'g on other grounds* 875 N.E.2d 218. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* A trial court must enter a sentencing statement that includes reasonably detailed reasons for imposing a particular sentence. *Id.* at 491. The purpose of this rule is to guard against arbitrary sentencing and to provide an adequate basis for appellate review. *Id.* at 489. A trial court may abuse its discretion by issuing an inadequate sentencing statement, finding aggravating or mitigating factors that are not supported by the record, omitting factors that are clearly supported by the record and advanced for consideration, or by finding factors that are improper as a matter of law. *Id.* at 490–91. "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* at 493. The relative weight given to aggravating and mitigating factors is not subject to review. *Id.* at 491.

■ We reject Webb's contention that the trial court's sentencing statement is not reasonably detailed. At the conclusion of the sentencing hearing, the trial court discussed the evidence concerning Webb's mental health and rejected it as a mitigating factor. The court then identified four aggravating factors and mentioned the evidence that supported each one. This statement is reasonably detailed and facilitates our review; therefore, we find no abuse of discretion in this regard.

Webb· also argues that the trial court abused its discretion by not finding as mitigating factors his mental health, his age, his remorse, his willingness to pay restitution, and his guilty plea. The record reflects that the trial court considered the evidence about Webb's mental· health, but concluded that it was not entitled to weight because Webb has a pattern of stopping his prescribed treatment and self-medicating with illicit drugs. Webb's own witnesses confirmed that he does not voluntarily stay· on his medications. Therefore, we find no abuse of discretion in the trial court's determination that Webb's mental health is not a mitigating factor.

As for his age, his remorse, and his willingness to pay restitution, Webb did not advance those mitigating factors for consideration in the trial court. Therefore, Webb has waived these issues for appeal. *Simms v. State,* 791 N.E.2d 225, 233 (Ind.Ct.App.2003) ("If the defendant fails to advance a mitigating circumstance at the sentencing hearing, this court will presume that the circumstance is not significant and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal.").

Waiver notwithstanding, Webb has not shown that these factors are significant and clearly supported by the record. Webb was twenty-two at the time he committed the robbery and already had a record consisting of two juvenile adjudications and seven convictions. *See Ellis v. State,* 736 N.E.2d 731, 736 (Ind.2000) (noting that there are "relatively old offenders who seem clueless and· relatively young ones who appear hardened and purposeful" and holding that the trial court properly declined to give mitigating weight to a defendant who was twenty-one at the time of the offense). As for his remorse, we give substantial deference to the trial court's evaluation because it may observe the defendant and is therefore in the best position to determine whether· the remorse is genuine. *Corralez v. State,* 815 .N.E.2d 1023, 1025 (Ind.Ct.App.2004). Although Webb apologized to B.Q., he also claimed that he had ·never hurt anyone. That claim is belied by his criminal record, which includes multiple battery convictions. Based on Webb's attempt to minimize his tendency toward violence, the trial court could properly conclude that his apology was not sincere. Finally, Webb cites no evidence in the record that he expressed willingness to pay restitution to B.Q.

Webb also argues that the trial court abused its discretion by not finding his guilty plea to be a. mitigating factor. The State argues that his plea is not entitled to mitigating weight because the evidence against him was overwhelming and his plea therefore was merely pragmatic. However, the decisions cited by the State are all cases in which the defendant pled guilty pursuant to a plea agreement. *E.g., Kinkead v. State,* 791 N.E.2d 243, 247–48 (Ind.Ct.App.2003), *trans. denied.* When a defendant receives a benefit from a plea agreement, trial courts often conclude that the defendant is not entitled to any additional benefit for pleading guilty. *See id.* (trial court did not abuse its discretion by not giving defendant's guilty plea significant mitigating weight where defendant already received the benefit of having charges dismissed pursuant to his plea agreement). Webb, however, pled guilty to all charges without a plea agreement. When a defendant willingly pleads guilty, he extends a benefit to the State and the victim by avoiding a full-blown trial. *Francis v. State,* 817 N.E.2d 235, 237–38 (Ind.2004). A defendant who pleads guilty deserves to have a benefit extended to him in return. *Id.* Therefore, we conclude that the trial court abused its discretion by not recognizing Webb's guilty plea as a mitigating factor. *See Cotto v. State,* 829 N.E.2d 520, 525–26 (Ind.2005) (where the

State dismissed charges based on its own interests and the defendant did not otherwise benefit from the plea agreement, the trial court erred by not identifying the guilty plea as a mitigating factor).

When the trial court abuses its discretion in sentencing, we will remand if we cannot say with confidence that the trial court would have imposed the same sentence. *Anglemyer*, 868 N.E.2d at 491. The trial court found four aggravating factors, none of which are contested by Webb: that he has a criminal record that has escalated in seriousness, that the victim was over the age of sixty-five, that he lay in wait for the victim, and that he self-medicated with illicit drugs instead of following his prescribed treatment. Although each individual sentence was above the advisory sentence, the trial court ordered several of the sentences to be served concurrently, so that his aggregate sentence was twenty years less than the maximum penalty that could have been imposed. Given the fact that the trial court imposed substantially less than the maximum sentence despite finding four aggravating factors, we conclude that the trial court would not have imposed a lesser sentence had it explicitly found Webb's guilty plea to be a mitigating factor.

### II. Appropriateness of Sentence

Webb also argues that his sentence is inappropriate. Specifically, he argues that the trial court should have recommended placement in a mental health facility. Our standard of review is as follows:

> Although a trial court may have acted within its lawful discretion in imposing a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant has the burden of persuading us that his sentence is inappropriate.

> The location where a sentence is to be served is an appropriate focus for application of our review and revise authority.... Nonetheless, we note that it will be quite difficult for a defendant to prevail on a claim that the placement of his sentence is inappropriate. This is because the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate. A defendant challenging the placement of a sentence must convince us that the given placement is itself inappropriate.

*King. v. State*, 894 N.E.2d 265, 267–68 (Ind. Ct.App.2008) (emphasis in original; citations omitted).

Webb argues that the trial court should have ordered a mental examination pursuant to Indiana Code Section 35–38–1–10, which authorizes trial courts to order an examination as part of the presentence investigation. Webb asserts that the trial court placed him in an untenable position by not ordering an examination, but then finding insufficient evidence to warrant a recommendation that he be placed in a mental health facility. However, Webb never requested an examination, and we decline to find the sentence inappropriate on the ground that no examination was conducted.

As to his character, Webb's medical records show that he has suffered from mental health issues from a young age. His mother and sister testified that he is a "different person" when he is on medication, but has a tendency to stop taking his medications. Tr. at 57, 66. Although

Webb claimed that he was unable to afford his medications, other evidence suggested that he simply does not like the effects of the medications. The effects of his mental disorders on his character are exacerbated by his willful conduct in stopping his prescribed course of treatment and instead using illegal drugs.

Furthermore, despite his claim that his violent behavior toward B.Q. was out of the ordinary, Webb has one adjudication and three convictions of battery or domestic battery. Webb has one additional adjudication and four additional convictions. His criminal activity has escalated in seriousness over time. He has previously been placed on probation and has had probation revoked in three different cases. He was on probation at the time of the current offenses. Webb has struggled to conform his behavior to the law even in the highly structured environment of jail and prison, where he has been sanctioned at least six times for misconduct ranging from trafficking to threatening staff.

As for the nature of the offenses, Webb lay in wait for B.Q., who was eighty-one at the time. Webb attacked this elderly woman and continued to kick her even as she lay helpless on the ground, struggling to protect herself from re-injuring her ribs, which had recently been broken in a car accident. He then took her purse and went on a spending spree with her credit card, racking up nine felonies in three days. We conclude that Webb has not demonstrated that his sentence is inappropriate in light of his character or the nature of his offenses. Therefore, we affirm.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.