**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ETHAN G. BARTANEN**
Bartanen Law Office, LLC
Salem, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JONATHAN R. SICHTERMANN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Feb 19 2013, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANIEL MILLER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 88A01-1205-CR-228 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WASHINGTON SUPERIOR COURT
The Honorable Frank Newkirk, Jr., Judge
Cause No. 88D01-1005-FA-267

**February 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Daniel Miller, a federal census worker, drank at least six beers at a bar, broke into the home of a woman he had visited while conducting census surveys several days earlier, and raped her twenty-one-year-old physically and mentally disabled daughter. The State charged Miller with class A felony burglary and class B felony rape. Miller pled guilty as charged, and the trial court sentenced him to concurrent terms of forty years (with five years suspended) for burglary and ten years for rape.

On appeal, Miller claims that the trial court abused its discretion in considering aggravating and mitigating circumstances at sentencing and that his sentence is inappropriate in light of the nature of the offenses and his character. We conclude that Miller has failed to carry his burden in either respect and therefore affirm his sentence.

**Facts and Procedural History**

Miller was employed as a federal census worker in Washington County. On the afternoon of May 4, 2010, the thirty-eight-year-old Miller visited the home of C.F., who resided with and cared for her twenty-one-year-old daughter, L.F. L.F. has cerebral palsy and is autistic and mildly mentally disabled. She cannot dress or shower herself, wash her hair, or brush her teeth. Miller told C.F. that he needed to conduct a census survey. C.F. told Miller that she had already filled out and mailed in the census questionnaire, but he insisted that the

census office had not received it. He then asked C.F. the survey questions and learned about L.F.'s age and dependent status.[1]

On the evening of May 8, Miller and some companions went to a bar, where he drank at least six beers. Miller left the bar sometime around 2:30 a.m. on May 9.

At approximately 4:30 a.m., C.F. got out of bed because she was cold. She exited her bedroom and encountered L.F., who told her that "a man was in [her] room hurting [her], choking [her], .… hitting [her], putting hands over [her] mouth." Tr. at 56.[2] C.F. noticed that L.F. was not wearing her pajama bottoms and underwear. She also noticed that L.F. had bloodshot eyes and scratches and bruises on her face and neck. The home's front door was "wide open." *Id*. at 66. C.F. called 911.

The responding police officers found a man's clothing and boots on the floor of L.F.'s bedroom, as well as a wallet containing Miller's driver's license and social security card. Officers went to Miller's apartment complex and determined that the hood of his vehicle was still warm. They found L.F.'s underwear inside the vehicle and Miller sleeping nude in his bed. L.F. was taken to a rape center for evaluation. A DNA swab taken from L.F.'s vagina, which had suffered blunt force trauma, matched Miller's DNA profile.

---

[1] C.F. testified that she and L.F. were picking up sticks in their yard when Miller arrived, whereas Miller testified that he did not see L.F. during his visit.

[2] Miller's counsel has included portions of the guilty plea and sentencing hearing transcripts in the appellant's appendix in violation of Indiana Appellate Rule 50(F), which says, "Because the Transcript is transmitted to the Court on Appeal pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix."

On May 10, 2010, the State charged Miller with class A felony burglary (burglary resulting in bodily injury) and class B felony rape (rape compelled by force or imminent threat of force or committed against a person who is so mentally disabled or deficient that consent to sexual intercourse cannot be given). On January 30, 2012, Miller pled guilty as charged pursuant to a plea agreement that left sentencing to the trial court's discretion. Miller did not dispute the State's factual basis for the offenses but insisted that he had no memory of them. The court accepted Miller's plea and ordered the probation department to prepare a presentence investigation report ("PSI").[3]

A sentencing hearing was held on April 10 and 19, 2012. At the conclusion, the trial court pronounced sentence against Miller as follows:

> Of course I heard that you are not prepared to say today that you believe you committed the crime. Your testimony was, of course, that that was the only truthful answer that you could give. That makes this an unusual case. But, it also is clear from the hearing, which was held back in January, that there is abundant evidence that you committed the crime and that you acknowledge that you are guilty of that crime and that has been previously determined. So any effort today to maybe create confusion about whether, in fact, you're guilty is, is not considered as a basis for [] the effect on the sentence. But I do have, as the attorneys have talked about certain aggravating and mitigating factors which are referred to in the statute [Indiana Code Section 35-38-1-7.1] specifically. But as the attorneys have also said there are some things that I can consider which are not statutorily outlined, but which ought to be considered. And, of course, your attorney rightly pointed out that one of those important factors is your lack of a criminal history. And as [your attorney]

---

[3] The appellant's appendix contains a copy of Miller's PSI on white paper in violation of the Indiana Rules of Court. Indiana Administrative Rule 9(G)(l)(b)(viii) provides that "[a]ll presentence reports pursuant to Ind. Code § 35-38-1-13" are "excluded from public access" and "confidential." Indiana Appellate Rule 9(1) requires that "[d]ocuments and information excluded from public access pursuant to Ind. Administrative Rule 9(G)(1) shall be filed in accordance with Trial Rule 5(G)." Indiana Trial Rule 5(G) states, "Whole documents that are excluded from public access pursuant to Administrative Rule 9(G)(1) shall be tendered on light green paper or have a light green coversheet attached to the document, marked Not for Public Access or Confidential."

4

noted, there are many people who come through here who have a number of crimes in their background and, in fact, they may have pages of things for me to review about their criminal history. But even having said that, it's very rare for a person to come through where their first conviction is for an A felony and so I just want to be clear as to the seriousness of this. The only thing greater than an A felony, as far as [its] seriousness in the law, is murder. And so when you enter a plea of guilty to an A felony then naturally I know you are, you must expect the sentence to be quite, quite punitive. And it will be, it must be under the law. In fact, what the legislature has said is, that in the ordinary case the advisory sentence for an A felony will be thirty years. And so if we say that that's where we begin and then look at the factors, that's in effect, what I'm trying to do. And I want you to know that I have kept an open mind throughout this day and the prior day about what the sentence should be. And it's not an easy thing to know what's in a person's heart. And one of the things that the Probation Department said was that after talking to you and reviewing your history they believed that you were unlikely to commit other crimes. And that you are likely to respond well to probation or short term imprisonment. And I've considered that. But I do have to tell you that I wasn't convinced by it. And the reason, of course, is that the circumstances are such that, you know, in some cases you may say well that will never happen again. But there are always going to be vulnerable people in their homes. There's always going to be alcohol available to people. And there's always going to be the risk that although you say you don't remember what happened here, there's always going to be the risk that this will happen again. If you can't explain why it happened or how it happened the first time, then it's hard for me to accept the proposition that it's not likely to happen the next time. But as I said I considered that and there is a lot of speculation, I guess, when we ask the probation department to prepare that report and I don't fault the probation department for making that statement. But I do have to say to you that I cannot find as a mitigating circumstance a belief that you are unlikely to commit this in [the] future or that you are likely to respond to short term imprisonment or probation. But I certainly do consider the fact that you have not had a substantial criminal history, in fact you had no criminal history prior to coming to Court on this. The prosecutor asked me to consider certain things, of course, as aggravating circumstances. And I can't say that I agree with everything that the prosecutor said, but there are certain things that are clear. And one is under the statute the victim was mentally or physically infirm. And that is an aggravating circumstance. And of course it is, it is important. One of the questions that you responded to and I gather, when you talked to probation about how you would react if it happened to your family is our general[] sense of justice that people shouldn't be bullied. And for a person who is mentally or physically infirm who has no chance of fending for

5

themselves and depends on someone else every, basically every minute of every day, to become a victim offends all of us. Offends society and the legislature recognized that when they made this an aggravated circumstance. The prosecutor asked me also to consider as an aggravating circumstance the fact that the harm which occurred in this case, was greater than what would be needed to prove the offense. And, and I believe that also has been shown. It would have been enough to have shown that in the course of committing the crime that there had been pain involved, but of course, there were multiple injuries to the victim and so I must find, therefore, that the harm which did occur was greater than necessary to prove the offense. The statute talks about a person entrusted with a person's care and if they are the person who creates or causes the crime that that's an aggravating circumstance. And that is not present here, but in considering what happened I have to be aware of the fact that you were at the house. You acted under the color of the law. That is you demanded information, which ultimately became used for the commission of the crime. Demanded information, I was told by [C.F.] in her testimony that she didn't want to answer your questions. She said she shouldn't have to answer your questions, that she had sent in the questionnaire already but that she was told no you have to answer my questions and who lives here. And that information acting in a position of trust and representing the government, forcing her to disclose things which ultimately were used against her and her daughter, that, I believe, should be considered as an aggravating factor, although it is not a statutory factor. It is something I considered.… If the advisory sentence [for a class A felony] is thirty years, the maximum sentence is fifty years. I also tend to agree with your attorney, that although this is, that this is not the worst of the worst aggravating circumstances. There are people of course who do have long criminal histories, they have similar crimes in their past, they have, um, permanent injuries that are committed or caused because of their crimes, um and so I do agree that this is not the worst of the worst when it comes to reviewing the aggravating circumstances and the maximum sentence isn't going to be imposed. But having balanced out all of the factors in this case, um, and considering the statutes carefully, the sentence of forty (40) years and five (5) years of that will be suspended. Thirty-five years will be executed and that is on Count 1 which is the burglary as an A felony. Now because the other sentence will also run concurrently, it will not reduce or increase that thirty-five years in prison plus five years on probation. But on Count 2, it is a total of ten (10) year[s], none of which is suspended, which again is the advisory sentence for that count.

*Id*. at 337-44.

This appeal ensued. Additional facts will be provided as necessary.

6

**Discussion and Decision**

*I. Aggravating and Mitigating Circumstances*

Miller challenges the trial court's consideration of aggravating and mitigating circumstances. "Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court." *Webb v. State*, 941 N.E.2d 1082, 1088 (Ind. Ct. App. 2011) (citation omitted), *trans. denied*.

> A trial court must enter a sentencing statement that includes reasonably detailed reasons for imposing a particular sentence. The purpose of this rule is to guard against arbitrary sentencing and to provide an adequate basis for appellate review. A trial court may abuse its discretion by issuing an inadequate sentencing statement, finding aggravating or mitigating factors that are not supported by the record, omitting factors that are clearly supported by the record and advanced for consideration, or by finding factors that are improper as a matter of law.

*Id*. (citations omitted). The relative weight given to aggravating and mitigating circumstances is not subject to review for an abuse of discretion. *Id*.[4]

*A. Aggravating Circumstances*

Miller first takes issue with the trial court's finding as an aggravating circumstance that his victim was "mentally or physically infirm." Tr. at 340. Miller points out that a victim's mental infirmity is a material element of class B felony rape and that a "'material element of a crime cannot be considered an aggravating circumstance when sentencing a

---

[4] To the extent Miller suggests that a trial court must weigh and balance aggravating and mitigating circumstances, we note that it is not required to do so. *Gervasio v. State*, 874 N.E.2d 1003, 1005 (Ind. Ct. App. 2007).

defendant.'" Appellant's Br. at 9 (quoting *Rogers v. State*, 878 N.E.2d 269, 274 (Ind. Ct. App. 2007));[5] *see also* Ind. Code § 35-42-4-1(a) (stating that "a person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when … the other person is compelled by force or imminent threat of force [or] … the other person is so mentally disabled or deficient that consent to sexual intercourse cannot be given" commits class B felony rape).

We first observe that although a victim's mental infirmity is a material element of class B felony rape, it is not a material element of class A felony burglary. Thus, even if the trial court erroneously considered L.F.'s mental infirmity in determining Miller's rape sentence (which is extremely unlikely given the ten-year advisory term and the probation officer's warning against doing so in the PSI), any error must be considered harmless in light of his concurrent forty-year burglary sentence. We further observe that a victim's physical infirmity is not a material element of either crime charged, and it is undisputed that L.F. had cerebral palsy and was unable to perform even simple physical tasks. In sum, Miller has failed to establish an abuse of discretion regarding this aggravator.

Miller also takes issue with the trial court's finding as an aggravator that "the harm which occurred in this case, was greater than what would be needed to prove the offense." Tr. at 340. Indiana Code Section 35-43-2-1 provides that "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits

---

[5] Miller also cites *Castenada-Nova v. State*, an unpublished memorandum decision from this Court, in violation of Indiana Appellate Rule 65(D) ("Unless later designated for publication, a not-for-publication memorandum decision shall not be regarded as precedent and shall not be cited to any court except by the parties to the case to establish *res judicata*, collateral estoppel, or law of the case.").

burglary, a Class C felony." The offense is a class A felony if it results in either bodily injury or serious bodily injury "to any person other than a defendant." *Id*. Bodily injury is defined as "any impairment of physical condition, including physical pain." Ind. Code § 35-31.5-2-29. Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." Ind. Code § 35-31.5-2-292.

Here, the charging information alleged that the burglary resulted in bodily injury to L.F. Appellant's App. at 10. Miller argues,

> In this case, the prosecution saw it fit to charge the crime as resulting only in bodily injury rather than serious bodily injury. One can presume that this was because the prosecution was not sure if the evidence comprised serious bodily injury. It does not seem appropriate for the State to charge Mr. Miller with simple bodily injury and then turn around and argue that the sentence should be enhanced because serious bodily injury in fact took place.

Appellant's Br. at 12. That is not what happened here. The State has consistently—and correctly—argued that L.F.'s injuries were both more numerous and more severe than required to constitute bodily injury; it has not argued that the injuries were so severe as to constitute serious bodily injury.[6] Moreover, the harm that occurred in this case was not merely physical. C.F. testified that the incident traumatized both her and L.F., who is now extremely anxious and has trouble sleeping. Again, we find no abuse of discretion.

---

[6] A rape center employee told C.F. that L.F.'s bloodshot eyes were caused "from her being blacked out" from lack of oxygen, which would constitute serious bodily injury. Tr. at 57.

9

Finally, Miller contends that the trial court erred in finding as an aggravating circumstance that he "acted under the color of the law" as a federal census worker in "demand[ing] information, which ultimately became used for the commission of the crime." Tr. at 341. Miller asserts,

> Frankly, there exists absolutely no evidence that Mr. Miller was so forceful in his actions. The victim's mother recounts an event in which she states that she already mailed in the [census] form and was told that it was not received so the questions had to be asked again. No testimony exists that disputes the veracity of Mr. Miller's alleged statements regarding the receipt of the form. Additionally, no evidence exists that indicates that Mr. Miller utilized any information obtained on that day in furtherance of the commission of these crimes. There is a litany of possibilities that could have led to Mr. Miller being in that home on the evening in question and nowhere in the record is a direct correlation drawn between any information obtained during the census interview and the crimes charged in this case.

Appellant's Br. at 13-14.

C.F. testified that Miller told her that "he was from the census bureau and he had to do" a census survey. Tr. at 60. C.F. told him that she had already sent in the census questionnaire, and "he said well we didn't get it, we have to do it again. And I said I don't see why we had to do it again when I'd already done it. And he says because we didn't get your paper. And I said if we have to we have to." *Id*. Miller acknowledged that he "would have found out information about" L.F. during the survey. *Id*. at 268. Based on this testimony and the facts and circumstances surrounding the burglary and rape, the trial court reasonably could have inferred that Miller demanded information from C.F. in his role as a federal census worker and later used that information to prey upon the vulnerable L.F. Once again, we find no abuse of discretion.

10

## B. *Mitigating Circumstances*

Miller first claims that the trial court failed to give his lack of criminal history sufficient mitigating weight. Such a claim is not subject to review. *Webb*, 941 N.E.2d at 1088.

He also claims that the trial court failed to find his guilty plea to be a mitigating circumstance. We note, however, that the trial court mentioned in its oral sentencing statement that Miller had acknowledged his guilt and specifically found as a mitigating factor in its written sentencing statement that Miller "had admitted his violations and accepted his punishment." Appellant's App. at 38. To the extent Miller claims that the trial court failed to give that factor sufficient weight, that claim is not subject to review. *Webb*, 941 N.E.2d at 1088.

Next, Miller argues that the trial court should have found his military service to be a mitigating factor. Miller did not raise this argument at sentencing and therefore has waived it on appeal. *See Spears v. State*, 735 N.E.2d 1161, 1167 (Ind. 2000) ("If the defendant does not advance a factor to be mitigating at sentencing, this Court will presume that the factor is not significant and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal.").

Finally, Miller contends that the trial court abused its discretion in rejecting two proposed mitigators mentioned by the probation officer in the PSI and raised by his counsel at the sentencing hearing: (1) that he "is likely to respond affirmatively to short-term imprisonment or probation"; and (2) "the circumstances of this crime are unlikely to occur."

Appellant's Br. at 17-18. We note that "[t]he trial court is not obligated to find a circumstance to be mitigating merely because it is advanced by the defendant. Rather, on appeal, a defendant must show that the proffered mitigating circumstance is both significant and clearly supported by the record." *Spears*, 735 N.E.2d at 1167 (citation omitted).

To reiterate, the trial court rejected those proposed mitigators as follows:

I've considered that. But I do have to tell you that I wasn't convinced by it. And the reason, of course, is that the circumstances are such that, you know, in some cases you may say well that will never happen again. But there are always going to be vulnerable people in their homes. There's always going to be alcohol available to people. And there's always going to be the risk that although you say you don't remember what happened here, there's always going to be the risk that this will happen again. If you can't explain why it happened or how it happened the first time, then it's hard for me to accept the proposition that it's not likely to happen the next time.

Tr. at 339.

In support of his argument, Miller points to his lack of criminal history and his low score on the Indiana Risk Assessment System Community Supervision Tool. For its part, the State notes that Miller's brother testified that he had personally seen Miller drink until he blacked out "[a] couple of times" and that when Miller drank, "he wasn't the same person that he is when he [doesn't] drink." *Id*. at 202. At the very least, reasonable minds could differ regarding whether Miller would respond affirmatively to short-term imprisonment or probation or whether the circumstances of the crimes are unlikely to recur, and therefore we cannot say that the trial court abused its discretion in rejecting those proffered mitigators.

## II. *Appropriateness of Sentence*

Miller also asks that we reduce his sentence pursuant to Indiana Appellate Rule 7(B), which states, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We have said that "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). "[T]he question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Miller bears the burden of persuading us that his sentence is inappropriate. *Id.*

As for the nature of the offense, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). Essentially, Miller is challenging only the forty-year sentence (with five years suspended) that he received for class A felony burglary. The sentencing range for a class A felony is between twenty and fifty years, with an advisory

sentence of thirty years. Ind. Code § 35-50-2-4. Miller broke and entered the home of a physically and mentally disabled young woman in the middle of the night, with the intent to commit the felony of rape. The burglary resulted in numerous physical injuries and lasting emotional trauma to Miller's defenseless victim, who was choked, hit, and sexually assaulted. The violent and disturbing nature of this offense clearly justifies a sentence above the thirty-year advisory term.[7]

Regarding Miller's character, we acknowledge his lack of criminal history and the supportive testimony of his family at the sentencing hearing. We also acknowledge that Miller pled guilty, but he waited over a year and a half to do so and the evidence of his guilt was overwhelming. Miller emphasizes his service in the Navy, but we have stated that "an honorable military service record does not excuse a sex crime." *Bluck v. State*, 716 N.E.2d 507, 515 (Ind. Ct. App. 1999). He also emphasizes his steady work history, but he took advantage of his position as a federal census worker to obtain information about his vulnerable future victim. Miller has consumed alcoholic beverages to the point of blacking out on several occasions, and this time the results were senseless and tragic. In sum, Miller has failed to persuade us that his sentence is inappropriate. Therefore, we affirm.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.

---

[7] Miller does not discuss the nature of the offenses at all in his appellate brief. The State claims that this Court held that "failure to address both prongs of the Rule 7(B) analysis constitutes a waiver for failing to make a cogent argument" and argues that Miller "has waived his Rule 7(B) argument." Appellee's Br. at 15-16 (citing *Perry v. State*, 921 N.E.2d 525, 528 (Ind. Ct. App. 2010)). In *Perry*, the defendant apparently failed to make a cogent argument regarding *either* prong. Here, because Miller has presented a cogent argument regarding his character, we choose to address the merits of his Rule 7(B) claim as to that prong.

14