Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2013, 5:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RANDY M. FISHER**
Deputy Public Defender
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARCUS R. CARTER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1304-CR-126 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D06-1208-FC-253

**December 20, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Marcus R. Carter appeals the eight-year sentence imposed by the trial court following his conviction for class C felony forgery. Carter asserts that the trial court abused its discretion in sentencing and that his sentence is inappropriate in light of the nature of the offense and his character. Finding no abuse of discretion and that he has not met his burden to demonstrate that his sentence is inappropriate, we affirm.

**Facts and Procedural History[1]**

On August 3, 2012, bank manager James Dingle and teller Megan Eicher were working at Tower Bank in Fort Wayne. A few minutes before the close of business, Carter and another man named Jason Thomas entered the bank. Carter and Thomas were each dressed as construction workers. Carter wore an orange construction vest, and Thomas wore a yellow construction hat that Dingle believed might have been a toy. Carter approached Dingle's teller window and Thomas approached Eicher's teller window. Thomas handed Eicher a check written for a large amount from Tippman Construction, and Carter handed Dingle a similar check from Tippman Construction. Because Carter was not a member of Tower Bank, Dingle asked Carter for identification. The driver's license presented by Carter indicated that he lived in Indianapolis. Dingle asked Carter several questions about whether

---

[1] We note that, in his statement of the facts section of his appellant's brief, Carter did not recite any of the facts underlying the forgery that are relevant to his claim that his sentence is inappropriate due to the nature of the offense in violation of Indiana Appellate Rule 46(A)(6) (The statement of facts section "shall describe the facts relevant to the issues presented for review…").

he had just moved to Fort Wayne and where he was doing construction work, but Carter just nodded and did not answer with specifics.

Because both Dingle and Eicher began getting error messages on their computers when trying to cash the checks, Dingle instructed Eicher to call Tippman Construction to verify the checks. Eicher spoke to Jason Rice, an accountant with Tippman Construction, while Carter and Thomas waited. Rice informed Eicher that Tippman Construction never issued payroll checks directly to individuals and that the checks Eicher was trying to verify did not match any of Tippman Construction's records. Rice asked Eicher to hold on to the checks and to notify authorities. Subsequent review of the checks revealed that the checks were reproductions of checks that had previously cleared and had been written to another recipient.

After ending her conversation with Rice, Eicher informed Carter and Thomas that she could not cash the checks and that she needed to hold on to them. Carter still asked for the checks to be returned to him, but Eicher refused. Carter and Thomas then left the bank. Dingle watched the men through the window while he called the police. He observed the men enter a Taco Bell, exit the restaurant, and then stand near a car talking.

Fort Wayne Police Department Officer Boyce Ballinger was dispatched to the scene. As he approached the bank in his squad car, he saw three men standing near Taco Bell, two of whom matched the descriptions given by Dingle. One of the men was handing an orange construction vest to the third male when the men noticed Officer Ballinger. The third male immediately got in his car and drove away while the other two men began walking to the

back of the parking lot. Officer Ballinger was able to pull his vehicle in front of the men and stop them for questioning. Dingle walked over and identified Carter and Thomas as the same individuals who had attempted to cash the Tippman Construction checks.

The State charged Carter with class C felony forgery. Following a trial on February 13, 2013, a jury found Carter guilty as charged. A sentencing hearing was held and the trial court imposed a sentence of eight years. This appeal followed.

**Discussion and Decision**

*I. Abuse of Discretion*

We first address Carter's contention that the trial court abused its discretion during sentencing. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court. *Id*. Specifically, ways in which a trial court may abuse its discretion include: (1) failing to enter a sentencing statement, (2) entering a sentencing statement that explains reasons for imposing sentence but the record does not support the reasons, (3) the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or (4) the reasons given in the sentencing statement are improper as a matter of law. *Kimbrough v. State*, 979 N.E.2d 625, 628 (Ind. 2012).

Here, the trial court found Carter's "extensive multi-county" criminal history as well as his twenty-three years of failed efforts at rehabilitation as aggravating factors. Sent. Tr. at

4

7. The court found no mitigating factors. Carter contends that the trial court abused its discretion in failing to find as mitigating factors his difficult childhood, his terrible health, and his history of substance abuse. Carter concedes that he did not advance these factors for the trial court's consideration during sentencing. His failure to do so has resulted in waiver of these issues on appeal. *See Webb v. State*, 941 N.E.2d 1082, 1089 (Ind. Ct. App. 2011) (noting that a defendant is precluded from advancing a mitigating circumstance for the first time on appeal), *trans. denied*.

## II. *Appropriateness of Sentence*

Carter next contends that his sentence is inappropriate. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Upon appellate review, we have the power to affirm, reduce, or increase the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010).

The current sentencing range for a class C felony is between two and eight years, with the advisory sentence being four years. Ind. Code § 35-50-2-6. Because the trial court imposed the maximum sentence of eight years, Carter maintains that his sentence should be

revised because he is not the "worst of the worst." Appellant's Br. at 12. Our supreme court has observed that the maximum sentences are generally appropriate for the worst offenders. *Buchanan v. State*, 767 N.E.2d 967, 973 (Ind. 2002). However, this is not a guideline to determine whether a worse offender could be imagined. *Id*. Rather, "we refer generally to the class of offenses and offenders that warrant maximum punishment." *Id.* Such a class encompasses a considerable variety of offenses and offenders. *Id*. When reviewing a maximum sentence, we should concentrate less on comparing the facts of the current case to others, whether real or hypothetical, and focus more on the nature, extent, and depravity of the offense, and what it reveals about the defendant's character. *Wells v. State*, 904 N.E.2d 265, 274 (Ind. Ct. App. 2009) (citing *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*), *trans. denied*.

Regarding the nature of the offense, Carter walked into a bank, apparently dressed as a construction worker, and tried to cash a forged and/or fraudulent check. Obviously, there was some planning involved in this crime of dishonesty. While we may agree with Carter that his offense, in itself, is not particularly egregious, in light of our succeeding discussion of his poor character, he fails to persuade us that the maximum sentence imposed by the trial court is inappropriate.

When considering the character of the offender, the defendant's criminal history is a relevant factor. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). Carter's extensive criminal history consists of twenty-one misdemeanor convictions and six felony convictions. While Carter maintains that many of these offenses involved substance abuse

6

and low-level felonies, we cannot ignore the sheer volume of his criminal history and how it reflects poorly on his character. As noted by the trial court, the record reveals failed attempts at rehabilitation spanning a twenty-three year period. In addition to being sentenced to the Department of Correction, Carter has been given the grace of suspended sentences, probation, community service, work release, home detention, and drug and alcohol treatment. He has had two suspended sentences revoked and four suspended sentences modified. All the while, he has continued his criminal behavior. During sentencing on the current offense, Carter denied responsibility for his crime, claiming that "the charge is a lie" and that much of his criminal history was the result of "misunderstandings." Sent. Tr. at 6. Carter's character does not support a sentence revision.

Based upon the foregoing, we cannot say that Carter's eight-year sentence is inappropriate in light of the nature of the offense and his character. Accordingly, we decline the invitation to revise his sentence. The sentence imposed by the trial court is affirmed.

Affirmed.

BAKER, J., and NAJAM, J., concur.