## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 07 2019, 9:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Glen E. Koch II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Rickey D. Haines,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

February 7, 2019

Court of Appeals Case No.
18A-CR-2113

Appeal from the Brown Circuit Court

The Honorable Judith A. Stewart

Trial Court Cause No.
07C01-1512-F1-373

**May, Judge.**

[1] Rickey D. Haines appeals his fourteen-year sentence on remand for Level 3 felony criminal confinement.[1] Haines argues the trial court abused its discretion during his resentencing by considering convictions he obtained after his original sentencing. Because Haines invited any alleged error by arguing the court could consider his testimony about his behavior while incarcerated between his first and second sentencing hearings, he cannot raise this alleged error on appeal. We affirm.

## Facts and Procedural History

[2] When Haines appealed following his first sentencing, we set out the facts as follows:

> As of December 2015, Haines and Jennifer Wagers ("Wagers") had been in an on-again/off-again relationship for approximately fourteen years, and they had two minor children together, J.H. and G.H. (together, "Children"). On December 8, 2015, Wagers went to Haines's residence to make dinner and pick up their Children, ages nine and five years old at the time, who would be getting off the school bus there. When Wagers arrived, she went inside to begin making dinner. At some point, Wagers went into the bathroom, and, shortly thereafter, Haines came in and closed the door behind him. Haines demanded that Wagers hand over her cell phone to him, because he wanted to search her phone for contact with another man, and the two argued. Wagers would not unlock her phone, and Haines was yelling at her. He told her to "assume the position," Wagers got on the floor on her knees, and Haines tried to drown her in the bathtub. She ended up on

---

[1] Ind. Code § 35-42-3-3(a)(2) (2014).

her stomach on the floor of the bathroom, and he had sex with her, which she testified was non-consensual. G.H. knocked on the bathroom door, and Haines told him go away. G.H. heard his mother crying and saying "stop," and he ran to summon Haines's mother ("Grandmother"), who lived nearby. Grandmother came to Haines's residence and knocked on the closed bathroom door, and Haines opened the door. Wagers asked Grandmother to stay, but she left the residence.

Eventually, Wagers escaped the bathroom and ran out of the residence, and Haines ran out another door, still arguing about the phone. Haines cornered Wagers on the porch and would not let her down the stairs to leave. He punched her in the face with his fist. As Wagers sat on the porch, Haines put Wagers in "a choke hold," saying "good night bitch" as she struggled. The Children came outside at some point, yelled at Haines "to stop," observed Haines put their mother in a choke hold, and saw him throw a bicycle at Wagers. He told the Children to go back into the house. Haines ripped a metal porch rail out of the porch and threatened to hit Wagers and break her kneecap. He then swung the metal pole at Wagers, striking her on the shin, ripping her pants, lacerating her leg, and bruising her foot. Wagers agreed to unlock her phone, and Haines looked through it. He saw messages to other people and was angry, and he ordered her to go back into the residence, which she did.

Inside, he made Wagers get his shotgun and give it to him, and he sent the Children to bed. He told Wagers to go to the bedroom, and he followed, bringing the shotgun and setting it in a corner. He told her to remove her pants and lay on her stomach, which she did, and he had intercourse with her, and he directed her to perform oral sex. During this time, Haines told Wagers that he was recording "everything" on her phone, indicating he was going to share it on social media "to show everyone how much of a whore [she] was and how much of a bad mother [she] was." Haines eventually went to sleep, but

Wagers did not leave because she could not walk and was afraid he would catch her. Sometime in the morning, Wagers regained custody of her phone, finding it on Haines's dresser, and after he left for work, Wagers called her sister, Jamie Wagers ("Jamie") and asked her to come for her. After Wagers had left Haines's residence, she called the Brown County Sheriff's Department to report what Haines had done.

Deputy Joshua Stargell ("Deputy Stargell") arrived, and Wagers told him that she had been battered the previous night by Haines. He observed a large laceration on her left shin, redness around her nose and neck. She showed the officer the metal pole that Haines used to batter her; it was about four feet long and had a bolt sticking out of it. She also told him that she was strangled and punched in the nose. Wagers told Chief Deputy Michael Morris ("Chief Deputy Morris") that Haines had said that he was recording sex acts on her phone, so Chief Deputy Morris collected Wagers's phone as evidence.

*****

On December 11, 2015, the State charged Haines with Level 1 felony rape, and it subsequently amended the information to add charges of Level 3 felony criminal confinement, Level 6 felony domestic battery, Level 6 felony strangulation, and Class A misdemeanor possession of a firearm by a domestic batterer. The State also alleged that Haines was a habitual offender.

*****

The jury found Haines not guilty of the rape charge and guilty of the remaining counts. Haines waived a jury trial as to the habitual offender charge, and, after a hearing, the trial court adjudicated him to be a habitual offender. . . . On May 1, 2017, the trial court . . . imposed a nine-year sentence on the criminal

confinement conviction, enhanced by six years for the habitual offender adjudication, two and one-half years on the domestic battery conviction, and one year on the firearm possession conviction, with the sentences to run concurrently for an aggregate sentence of fifteen years. The court subsequently vacated the conviction for Level 6 felony strangulation on double jeopardy grounds.

*Haines v. State*, No. 07A01-1708-CR-1994 at *1-*5 (Ind. Ct. App. March 14, 2018).

[3] On appeal, Haines challenged his convictions and sentence. We affirmed Haines' convictions, *id*. at *10, but we vacated Haines' habitual offender enhancement because his prior felony convictions were Class D felonies that had not occurred within the prior ten years. *Id*. at *9. We then remanded for the trial court to resentence Haines for his criminal confinement conviction without the habitual offender enhancement attached. *Id*.

[4] At the resentencing hearing, over objection from the State, Haines testified regarding his conduct while incarcerated subsequent to the original sentencing. The State then entered evidence of convictions that Haines acquired following his original sentencing: Class A misdemeanor invasion of privacy,[2] Class A misdemeanor possession of a firearm by a domestic batterer,[3] and Class B

---

[2] Ind. Code § 35-46-1-15.1 (1) (2014).

[3] Ind. Code § 35-47-4-6 (2007).

misdemeanor criminal mischief.[4] The trial court found Haines' criminal history and probation violation as aggravators and Haines' good behavior in prison and participation with the "Suicide Companion" group as mitigators. (Tr. at 16.) The court sentenced Haines to fourteen years for Level 3 felony criminal confinement.

# Discussion and Decision

[5] Haines argues the trial court abused its discretion by considering, as part of his criminal history, convictions he had not acquired at the time of the original sentencing hearing. "We initially observe that sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Gleason v. State*, 965 N.E.2d 702, 710 (Ind. Ct. App. 2012). An abuse of discretion occurs if the trial court's decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind. 2007).

> The trial court can abuse its discretion by: (1) issuing an inadequate sentencing statement, (2) finding aggravating or mitigating factors that are not supported by the record, (3) omitting factors that are clearly supported by the record and

---

[4] Ind. Code § 35-43-1-2 (a)(1) (2014).

advanced for consideration, or (4) finding factors that are
improper as a matter of law.

*Gleason*, 965 N.E.2d at 710.

Haines claims the court abused its discretion by allowing the State to present
evidence of three new convictions Haines acquired after his original sentencing
hearing. However, during the resentencing hearing, while Haines testified on
his own behalf, the following events unfolded:

> Q: Now since you've been in prison what have you been doing
> with your time?
>
> A: I graduated a course in Seventh Day Adventism and-
>
> [STATE]: Your Honor, if I could. I'm just gonna object to this
> line of questioning, because I think it exceeds the scope of what
> would have happened as far as sentence. . . sentencing would
> have been concerned when he was originally sentenced.
>
> [DEFENSE]: Your Honor if I may respond?
>
> THE COURT: Yes.
>
> [DEFENSE]: I believe, I'll have to find the case that I did have
> up. There was a specific case that indicated that on re-sentencing
> the Court could consider an aggravating factor that took place
> between the original sentencing and the re-sentencing and in that
> case it was perjury of the defendant and then testifying against
> the co-defendant. So, my take on that would be that if an
> aggravating factor can be admitted of something that occurred
> after sentencing, but prior to date of re-sentencing the same

> would go for a mitigating factor and that case was, Hole [sic] v
> State, 839 NE 2nd 1250.
>
> THE COURT: Alright.  I will go ahead and allow the testimony
> and [State] if you have anything in the interim since the last one
> that would be admitted as well.  Go ahead [Defense].

(Tr. Vol. II at 6-7.)  Thus, Haines urged the trial court to admit evidence of events that occurred between the first and second sentencing hearings.

[7]     "The doctrine of invited error is grounded in estoppel.  Under this doctrine, a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct."  *Witte v. Mundy ex rel. Mundy*, 820 N.E.2d 128, 133-4 (Ind. 2005).  Because Haines invited any error that may have occurred when the court admitted evidence of convictions Haines obtained after his first sentencing hearing, he cannot raise that issue on appeal.  *See Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005) (State not allowed to appeal error it invited during trial).

[8]     Had Haines not invited the error, we cannot say the consideration of his later convictions would have required reversal.  When a trial court considers an improper aggravator, we may nevertheless affirm the sentence if we can "say with confidence that the trial court would have imposed the same sentence." *Webb v. State*, 941 N.E.2d 1082, 1090 (Ind. Ct. App. 2011) (affirming despite trial court's failure to consider guilty plea a mitigator), *trans. denied*.  The convictions that Haines now says the court should not have considered were based on charges that were filed on June 18, 2015, and Haines' original

sentencing was on May 5, 2017, (App. Vol. II at 246), such that the trial court had access to information about the charges at the original sentencing hearing. The pending charges demonstrate Haines' prior interaction with the judicial system had not led him to live a law-abiding lifestyle and leave a negative impression of his character. As such, we are confident the trial court would have reached a fourteen-year sentence regardless whether those acts were considered as pending charges or as convictions. *See*, *e.g.*, *Webb*, 941 N.E.2d at 1090 (affirming sentence despite abuse of discretion).

# Conclusion

Because Haines insisted the court could consider his behavior while incarcerated after the first sentencing, he invited any error that may have occurred when the State introduced evidence of convictions that Haines obtained after the first sentencing. Additionally, any error in considering Haines' subsequent criminal history was harmless. Accordingly, we affirm.

Affirmed.

Baker, J., and Tavitas, J., concur.