## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 04 2017, 7:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael J. Jackson Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 4, 2017

Court of Appeals Case No.
79A04-1703-CR-660

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause Nos.
79D02-1607-F5-107
79D02-1609-F2-26

**Crone, Judge.**

# Case Summary

[1] Facing charges under three separate causes, Michael J. Jackson Jr. pled guilty pursuant to a single plea agreement to four felony offenses. Sentencing was left to the trial court's discretion, and the trial court sentenced him to an aggregate term of twenty years. In this consolidated appeal, Jackson challenges the portion of his sentence attributable to the offenses in one of the three causes, arguing that his sentence is inappropriate in light of the nature of the offenses and his character. He also contends that the probation condition restricting him from entering a liquor store is unconstitutionally vague. As a preliminary matter, we find that because Jackson pled guilty to all four offenses pursuant to a single plea agreement, Indiana precedent requires that we review his aggregate sentence, not merely a portion of it. We conclude that Jackson has failed to carry his burden to show that his twenty-year aggregate sentence is inappropriate. We also reject Jackson's challenge to his probation condition. Accordingly, we affirm.

# Facts and Procedural History

[2] On July 13, 2016, Chan Weng Yan was walking to her apartment when she saw a male, later identified as Jackson, ahead of her. After Yan walked behind a building, she no longer saw Jackson. Yan arrived at her apartment building and went inside. As she reached the door to her apartment, Jackson grabbed her from behind, wrapping both of his arms around her body. He lifted her up and threw her to the ground. While Yan was on the ground, Jackson searched

her pockets, took her wallet, and fled. Yan had $6 in her wallet. The next day, Yan told police that her knee and two fingers hurt due to Jackson's actions.

[3] Four days later, Minglang Li, who lived in the same apartment building as Yan, was returning home. As he unlocked the door to his second-floor apartment, he turned to see Jackson running up the stairs toward him. Jackson said, "Give me all your money or I will killl [sic] you." Appellant's App. Vol. 2 at 132. Li gave Jackson approximately $100. As Jackson ran away, he told Li, "Don't tell anyone about this, I know where you live." *Id.*

[4] Police investigated the two robberies and identified Jackson as a suspect. They went to an apartment where Jackson was expected to be and knocked on the door. Jackson answered. Although officers recognized Jackson, he repeatedly told them his name was John. After the police arrested him for false informing, he told them his real name. Police transported Jackson to the police station. There, Jackson was advised of his rights, waived his right to remain silent, and admitted to robbing Yan and Li. The State charged Jackson under cause number 79D02-1607-F5-107 ("Cause F5-107") with two counts of level 5 felony robbery, one count of level 6 felony intimidation, and two counts of class A misdemeanor theft. On August 3, Jackson posted bond and was released.

[5] On August 5, the State charged Jackson under cause number 79D05-1608-CM-2826 ("Cause CM-2826") with class A misdemeanor criminal trespass. Apparently, he posted bond and was released.

[6] On August 5, the State also filed a motion to revoke Jackson's bond in Cause F5-107. On August 19, the trial court issued an order revoking Jackson's bond and issued a warrant for his arrest.

[7] On August 27, Jackson went to sixty-three-year-old Connie Maus's apartment and knocked on the door. When Maus opened the door, Jackson put a gun to her head and forced his way inside. Maus backed up and sat on her bed. Maus told police that Jackson said, "If you scream I'll shoot you." *Id*. at 134. Maus told him that she did not have any money. While she sat on her bed, Jackson looked around and found her handgun and a handgun magazine, which he stole. Then, he held the gun to her head and took her sapphire ring off her finger. Jackson fled the apartment. Police arrested him the following day.

[8] In September 2016, under cause number 79D02-1609-F2-26 ("Cause F2-26"), the State charged Jackson with level 2 felony burglary, level 3 felony armed robbery, level 4 felony burglary, level 3 felony criminal confinement (later amended to level 6), level 5 felony intimidation, class A misdemeanor resisting law enforcement, level 6 felony theft of a firearm, and class A misdemeanor theft.

[9] On February 8, 2017, pursuant to an open plea agreement, Jackson pled guilty to two level 5 felony robberies under Cause F5-107, and level 3 felony armed robbery and level 6 felony criminal confinement under Cause F2-26. The State agreed to dismiss the remaining charges in both causes and Cause CM-2826.

The plea agreement "embodie[d] the entire agreement between the parties." *Id.* at 62. In Cause F5-107, the trial court sentenced Jackson to consecutive terms of four years, with three years executed and one year suspended, for each robbery conviction. In Cause F2-26, the trial court imposed a twelve-year sentence for the armed robbery conviction, with eight years executed and four years suspended to probation, and a concurrent two-year sentence for the criminal confinement conviction. The trial court ordered that the sentences in the two causes run consecutive to each other, for an aggregate sentence of twenty years, with fourteen years executed and six years suspended. As a condition of Jackson's probation, the trial court restricted him from "entering a bar, tavern, or liquor store." *Id.* at 73.

[10] Jackson timely filed his notices of appeal in Causes F5-107 and F2-26. He subsequently filed a petition to consolidate the appeals, which we granted.

## Discussion and Decision

## Section 1 – We must review Jackson's aggregate sentence for all offenses under the plea agreement.

[11] As a preliminary matter, we observe that Jackson challenges only the portion of his sentence attributable to Cause F5-107, i.e., his two convictions for level 5 felony robbery. In *Webb v. State*, 941 N.E.2d 1082, 1087-88 (Ind. Ct. App. 2011), *trans. denied*, we held that a defendant may not limit our review of his sentence by merely challenging an individual sentence within a single sentencing order that includes multiple sentences. There, the defendant pled

guilty without a plea agreement to robbery, six counts of fraud, and three additional counts in one cause, and misdemeanor OWI from a separate but consolidated cause. *Id*. at 1084-85. On appeal, he challenged only his twenty-year maximum sentence for robbery rather than his twenty-five-year aggregate sentence. *Id*. at 1085. In holding that our review could not be so limited, we relied on *Cardwell v. State*, 895 N.E.2d 1219, 1224-25 (Ind. 2008), where our supreme court emphasized the importance of focusing our review on the aggregate sentence rather than the length of the sentence on an individual count. *Webb*, 941 N.E.2d at 1087-88.

[12] Here, the trial court issued separate sentencing orders for Causes F5-107 and F2-26 and ordered that the sentences run consecutively. Notwithstanding the separate sentencing orders, Jackson pled guilty pursuant to a single plea agreement that covered three separate causes against him. The plea agreement is captioned with all three cause numbers and articulates the convictions or dismissal of counts under each. Appellant's App. Vol. 2 at 62. Specifically, in exchange for Jackson's guilty plea to a total of four counts, the remaining six counts under Cause F2-26 were dismissed and Cause CM-2826 was dismissed in its entirety. To review his sentence only with respect to two felony convictions, as he urges, would essentially amount to ignoring important aspects of the contract between the parties, such as the substantial benefit that he received in exchange for his guilty plea. The plea agreement represented a single transaction that "embodie[d] the entire agreement between the parties." *Id*. We believe that the reasoning in *Cardwell* and *Webb* extends to

circumstances such as these where a defendant pleads guilty pursuant to a single plea agreement to offenses charged under separate cause numbers. In fact, we have recently so held in *Moyer v. State*, No. 79A04-1703-CR-477, 2017 WL 3975653 at * 2 (Ind. Ct. App. Sept. 11, 2017), *opinion not yet certified*. We review Jackson's aggregate twenty-year sentence accordingly.

## Section 2 – Jackson has failed to carry his burden to show that his sentence is inappropriate.

[13]     Jackson asks us to reduce his sentence pursuant to Appellate Rule 7(B), which states, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When reviewing a sentence, our principal role is to leaven the outliers rather than necessarily achieve what is perceived as the correct result in each case. *Cardwell*, 895 N.E.2d at 1225. "We do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). In conducting our review, we may consider all

aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). In addition, as we assess the nature of the offense and character of the offender, "we may look to any factors appearing in the record." *Boling v. State*, 982 N.E.2d 1055, 1060 (Ind. Ct. App. 2013). Jackson has the burden to show that his sentence is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218.

[14] Turning first to the nature of the offenses, we observe that "the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed." *Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011). Jackson's aggregate twenty-year sentence comprises a twelve-year term for his level 3 felony conviction (concurrent to a two-year term for his level 6 felony conviction) and consecutive four-year terms for his two level 5 felony convictions. The sentencing range for a level 3 felony is three to sixteen years, with an advisory term of nine years. Ind. Code § 35-50-2-5(b). The sentencing range for a level 5 felony is one to six years, with an advisory term of three years. Ind. Code § 35-50-2-6(b). A level 6 felony has a sentencing range of six months to two and one-half years, with an advisory term of one year. Ind. Code § 35-50-2-7(b).

[15] Jackson argues that a sentence above the advisory is inappropriate because none of the victims suffered injury, one of the robberies involved no use of

force, and one of the robberies involved a loss of only $6. Jackson's argument ignores the decidedly violent circumstances of his crimes. He grabbed Yan with both arms, lifted her up, and threw her to the ground. The following day, her knee and fingers hurt. He threatened to kill Li and warned him not to report the crime. His third victim was a sixty-three-year-old woman. He forced his way into her home with a gun pointed at her head. He threatened to kill her if she screamed. He held a gun to her head while he took her ring off her finger. In addition, he committed all three robberies within only forty-five-days of each other. On balance, we cannot say that Jackson has shown compelling evidence portraying the nature of the offenses in a positive light.

[16] As for Jackson's character, he claims that he was only eighteen years old at the time of his offenses, his childhood was extremely difficult, he has mental health issues, his juvenile criminal history is not substantial, and family and community leaders showed support for him at sentencing. In describing his life, he notes that he was born "a drug baby" and designated a child in need of services, and his parents' parental rights were terminated. Tr. at 38. He was adopted by his grandmother at age seven, but when he was twelve his grandfather died leaving him without a male role model. Psychological evaluations show that he was diagnosed with attention-deficit/hyperactivity disorder ("ADHD") and oppositional-defiant disorder at age seven, for which he received medication until he refused treatment at age sixteen. His most recent psychological evaluation includes diagnoses for ADHD, intermittent explosive disorder, cannabis use disorder, and antisocial personality disorder.

His criminal history consists of two juvenile adjudications for misdemeanor conversion and visiting a common nuisance. He was also charged with battery resulting in bodily injury, but that was dismissed after he wrote a letter of apology to the victim.

[17] We acknowledge that Jackson has experienced many hardships from the time of his birth, and we understand that it is often difficult to overcome such adversity. We observe that the trial court recognized Jackson's youth and hardships as mitigating factors. However, even though Jackson was offered numerous services through probation and the Department of Child Services, he has exhibited a disturbing propensity to engage in criminal activity. He committed the instant offenses after warrants for his arrest were issued from East Chicago City Court for failing to appear for 2016 charges of possession of marijuana and criminal trespass and from LaPorte Superior Court for a 2016 charge of theft. At the time of sentencing in the instant case, the East Chicago and LaPorte charges were still pending. After posting bond for Cause F5-107, he committed the offense under Cause CM-2826. After he posted bond for Cause CM-2826, he committed the offenses under Cause F2-26. Despite his numerous contacts with law enforcement, he appears to be unwilling or unable to refrain from criminal activity, and his actions are continually becoming more violent. We also note that he lied to police about his identity during their investigation under Cause F5-107. We conclude that Jackson has failed to carry his burden to show that his sentence is inappropriate based on the nature of the offenses and his character. Accordingly, we affirm his sentence.

## Section 3 – The probation condition that restricts Jackson from entering a "liquor store" is not unconstitutionally vague.

[18] Jackson also asserts that the probation condition that restricts his entry into a "liquor store" is unconstitutionally vague in that it may be read to prohibit entry to any business that sells liquor, such as pharmacies and grocery stores, in which case it is impermissibly overbroad. Appellant's App. Vol. 2 at 73.[1] In reviewing his argument, we note that trial courts have broad discretion in determining the appropriate conditions of a defendant's probation. *Bratcher v. State*, 999 N.E.2d 864, 873 (Ind. Ct. App. 2013), *trans. denied* (2014). However, "[a] probationer has a due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison." *McVey v. State*, 863 N.E.2d 434, 447 (Ind. Ct. App. 2007) (citing *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002)). To avoid being unconstitutionally vague, the condition must be clear enough so that individuals of ordinary intelligence would be adequately informed of the general conduct that is proscribed. *Patton v. State*, 990 N.E.2d 511, 516 (Ind. Ct. App. 2013). The condition "need not list, with itemized exactitude, every item of conduct that is prohibited." *Id*.

[19] In support of his claim, Jackson relies on *Collins v. State*, 911 N.E.2d 700 (Ind. Ct. App. 2009), *trans. denied*. There, a convicted sex offender appealed his

---

[1] Jackson did not object to this probation condition at sentencing and signed the probation condition form. However, the State does not argue that he failed to preserve his claim for appellate review.

probation condition that restricted him from visiting "businesses that sell sexual devices or aids." *Id*. at 714. Another panel of this Court concluded that that condition was unfairly broad because it could extend to drug stores. *Id*.

[20] We disagree with Jackson that the term "liquor store" is akin to "businesses that sell sexual devices or aids." "Liquor store" is not commonly understood to mean any business that sells liquor; rather, it is commonly understood as a specific kind of store with the principal purpose of selling liquor. Furthermore, as the State points out, our legislature has defined liquor store in the context of alcohol laws. "The term 'package liquor store' means a place or establishment that meets the requirements provided in IC 1971, 7.1-3-10, and whose exclusive business is the retail sale of alcoholic beverages and commodities that are permissible under this title for use or consumption only off the licensed premises." Ind. Code § 7.1-1-3-28. The terms that Jackson asserts could be confused with liquor store have different definitions. *See* Ind. Code §§ 7.1-1-3-18.5 (defining grocery store) and -15 (defining drug store). Consequently, we conclude that the probation condition restricting Jackson from entering liquor stores is constitutionally sound.

[21] Affirmed.

Vaidik, C.J., and Mathias, J., concur.